MICHIGAN HARDWARE CO. *v.* MERRIFIELD.

1. PLEADING—CONTRACTS—ASSUMPSIT—COMMON COUNTS.

Plaintiff sold merchandise to defendant upon the stipulation that certain nonsalable goods in defendant's stock might be returned in part payment for the consignment. Plaintiff found part of the returned goods in poor condition and refused to accept the same, claiming that more than was agreed upon was returned; plaintiff declined to accept the merchandise, and defendant wrote that the plaintiff might dispose of the returned stuff as best it could. No settlement was reached and an action was instituted upon the common counts. *Held*, that the price of the goods sold was recoverable under the pleading.

2. SALES—CONTRACTS—ACCEPTANCE.

An offer of the seller of goods to accept in payment of the price certain returned goods, to be disposed of on the best possible terms, to which offer the buyer replied that this would be all right, and to please do the best it could, constituted an offer and acceptance, and authorized plaintiff to sue for the price under the common counts, and to retain the goods in its hands to be disposed of upon defendant's account at the best obtainable terms.

Error to Van Buren; Des Voignes, J. Submitted April 16, 1915. (Docket No. 114.) Decided June 7, 1915.

Assumpsit in justice's court by the Michigan Hardware Company against Edwin J. Merrifield for goods sold and delivered. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for plaintiff, defendant brings error. Affirmed.

*W. J. Barnard,* for appellant.

*L. J. Lewis,* for appellee.

Plaintiff declared upon the common counts claiming a balance due of $52.40, with interest. Plaintiff's demand arose out of a transaction which may be stated briefly as follows: On September 4, 1913, the defendant purchased from the plaintiff a bill of goods amounting to $169.69. It was agreed between the parties at that time that the defendant might ship to plaintiff, in partial payment for said bill of goods, certain seat hooks, neck yoke rings, and soldering irons, which the defendant had in stock and for which he had no sale. The parties do not agree upon the terms of the contract as to either the quantity or the quality of the goods to be shipped by the defendant to the plaintiff. The plaintiff shipped the goods sold by it to the defendant at the agreed price, and no question is made by the defendant as to the quality or price of the goods received by him from the plaintiff. Upon receipt of said goods, defendant thereupon shipped to the plaintiff certain goods which he claimed he had a right to do under the contract. On their arrival at plaintiff's establishment, it is plaintiff's claim that as to the seat hooks and neck yoke rings the goods sent were in a badly rusted and unsalable condition, and in a quantity largely in excess of that agreed upon

between them at the time the contract was made. The soldering irons were as represented. Defendant made settlement of the account according to his view of the transaction, sending the plaintiff $106,83, and claiming credit by way of discount and goods shipped to plaintiff in exchange, in the sum of $52.86. Upon the examination of the goods shipped by defendant to the plaintiff, plaintiff immediately notified defendant that the goods received were unsalable and largely in excess of the agreement. The soldering irons, however, were found to be as represented in quality and quantity, and credit therefor was allowed defendant in the sum of $8.28. This amount, together with the discount and the cash payment, made a total of $117.29, leaving a balance of $52.40. Receiving no reply from its letter of September 17, 1913, plaintiff, on September 25, 1913, wrote defendant as follows:

"September 25, 1913, Grand Rapids.
"E. J. Merrifield,
   "Bloomingdale, Michigan.
"*Dear Sir:*
   "We regret that we have not heard from you in reply to our recent letter relative to seat hooks and neck yoke ends that you recently shipped to us. We are holding them subject to your shipping instructions and unless we hear from you promptly as to where you want them shipped we will find it necessary to return them to you at Bloomingdale. You should have told me at the time the quantity that you had and furthermore the exact condition that they were in.
   [Signed] "Michigan Hardware Company."

To this defendant replied:

"Bloomingdale, Michigan, September 29, 1913.
"Mr. H. W. Spindler,
      "President Michigan Hardware Company,
         "Grand Rapids, Michigan.
"*Dear Sir:*
   "Your letter of the 17th was received in my absence and regret the delay caused in answering regarding

seat hooks and neck yoke ends. I am certainly surprised at your remarks as you will remember that I called your attention to some of your goods and told you these seat hooks and ends were in about the same condition. These could very easily be brightened up in some foundry by being placed in a rattler, and this could be done at our expense if you wish. We stated to you at the time the deal was made that there was about 40 or 50 dozen of each but we found upon investigation we had more neck yoke ends than the seat hooks. In the event you intend to return these goods to us of course we would be obliged to return like amount of goods which we purchased of you in the deal. Kindly let us know your wishes in the matter.

"Yours very truly,

"E. J. MERRIFIELD."

Plaintiff thereupon wrote:

"GRAND RAPIDS, October 2, 1913.

"E. J. MERRIFIELD,

"Bloomingdale, Michigan.

"*Dear Sir:*

"The writer has your favor of the 29th ultimo, which has been fully noted, and in reply will say that the writer was no doubt more surprised than you were when he received the seat hooks and neck yoke rings in the condition they were in, because you informed him when you were here that they were in the same condition as what we had in stock. Now, you well know, Mr. Merrifield, that the goods which you returned to us are not in a salable condition, and if they were you would have used them yourself. We are not going to send them to a foundry to be rattled as the quantity is altogether too great for our requirements. If you had told us at the time that you had a barrel of seat hooks and a half barrel of rings the writer would have informed you promptly that he could not use them, as he well knows what our requirements are, and certainly would not stock up on this item three or four years' supply because the sale on seat hooks is limited and, as stated in our previous letters, we cannot use these goods. We will gladly hold them subject to whatever disposition we can make of them and the writer will make an effort to do the best we possibly can for you. If this is not satisfactory then

we must accept your proposition that you return goods to us of like amount; but in closing will say that this will be far from being a good business proposition.

[Signed] "MICHIGAN HARDWARE COMPANY."

To this letter defendant replied:

"BLOOMINGDALE, MICHIGAN, October 4, 1913.
"MICHIGAN HARDWARE COMPANY,
"Grand Rapids, Michigan.
*"Gentlemen:*
"Your letter of the second instant received and we believe your suggestion to hold these goods and make whatever disposal of them that you can to be all right. Please do the very best you can on them.

"Yours truly,
"E. J. MERRIFIELD."

Following this on October 8, 1913, November 20, 1913, December 6, 1913, December 12, 1913, December 26, 1913, January 16, 1914, and January 23, 1914, plaintiff wrote to defendant making insistent demands for settlement of the balance of $52.40. No settlement was made by the defendant, and on January 6, 1914, plaintiff returned the rejected goods to the defendant. On January 29, 1914, defendant finally answered the demands of the plaintiff and offered to pay $40 in payment of the balance of the claim. This was rejected by plaintiff and suit was brought. The case was first tried in justice's court before a jury, where a verdict was rendered for plaintiff, and upon appeal to the circuit court the same result was reached.

BROOKE, C. J. (*after stating the facts*). There are many assignments of error on the part of the defendant. The one chiefly relied upon, however, seems to be that the defendant was entitled to an instructed verdict because plaintiff's claim grew out of a special contract and involved an exchange of goods. Many authorities are cited to the effect that recovery can-

not be had under the common counts of assumpsit where damages are sought for the breach of a special contract. There is no doubt as to the correctness of the rule relied upon, but we are of opinion that it is not applicable to the case at bar.

We are of opinion that the original contract was later modified by the parties through their correspondence. On October 2, 1913, after the discovery of the alleged unsatisfactory condition and quantity of the goods shipped by defendant to plaintiff, plaintiff wrote defendant as follows:

"We will gladly hold them subject to whatever disposition we can make of them and the writer will make an effort to do the best we possibly can for you. If this is not satisfactory then we must accept your proposition that you return goods to us of like amount; but in closing will say that this will be far from being a good business proposition."

To this proposition defendant relied on October 4th:

"Your letter of the second instant received and we believe your suggestion to hold these goods and make whatever disposal of them that you can to be all right. Please do the very best you can on them."

These letters, in our opinion, constitute a very clear proposal and acceptance. Therefore, the balance of the bill owing from defendant to the plaintiff became immediately due and payable and the goods shipped by defendant to plaintiff remained the property of the defendant in the possession of the plaintiff to be disposed of by the plaintiff for the account of the defendant. That such a balance may be recovered under the common counts in assumpsit is elementary. What occurred after that agreement had been reached is of no special importance. The most that can be said is that the defendant refused to pay the balance, and sought to secure a settlement on different terms which the plaintiff refused to accept. We think that

the learned circuit judge should have directed a verdict for the plaintiff for the full amount claimed. Inasmuch as the jury, under a charge which is much criticised by the defendant, reached the same result, it becomes unimportant to consider the assignments of error based upon that charge.

The judgment is affirmed.

MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred. OSTRANDER, J., did not sit.